UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MALKA RAUL, Individually and on Behalf of All Others Similarly Situated, | § § § | |
| Plaintiff, | § § | Civil Action No. 4:18-cv-1056 |
| v. | § § | JURY TRIAL DEMAND |
| | § | |
| LAYNE CHRISTENSEN COMPANY, DAVID A.B. BROWN, J. SAMUEL BUTLER, MICHAEL J. CALIEL, ROBERT R. GILMORE, JOHN T. NESSER III, NELSON OBUS, ALAN P. KRUSI, GRANITE CONSTRUCTION INCORPORATED, and LOWERCASE MERGER SUB INCORPORATED, | § § § § § § § § § § | |
| Defendants. | § § | |

## CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS

Plaintiff Malka Raul ("Plaintiff") by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by Layne Christensen Company ("Layne Christensen" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning Layne Christensen and Defendants.

## SUMMARY OF THE ACTION

1.      Plaintiff brings this class action on behalf of the public shareholders of Layne Christensen against the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed merger of the Company in a stock-for-stock transaction with Granite Construction Incorporated ("Granite") (the "Proposed Transaction").

2.      On February 13, 2018, Layne Christensen entered into an Agreement and Plan of Merger (the "Merger Agreement") with Granite and Lowercase Merger Sub Incorporated, a wholly owned subsidiary of Granite ("Merger Sub"), pursuant to which Merger Sub will merge with and into the Company, and the Company will be the surviving corporation in the merger and a wholly owned subsidiary of Granite.

3.      Pursuant to the terms of the Merger Agreement, each share of the Company's common stock issued and outstanding (other than shares (1) held in treasury of the Company or (2) directly or indirectly owned by Granite, Merger Sub or a wholly owned subsidiary of the Company) will be cancelled and converted into 0.27 (the "Exchange Ratio") validly issued, fully paid and non-assessable shares of Granite's common stock (the "Merger Consideration").  No fractional shares of Granite's common stock will be issued in the Merger, and the Company's stockholders will receive cash in lieu of any fractional shares.  According to the Company, the Proposed Transaction is valued at $565 million.

4.      On March 13, 2018, in order to convince Layne Christensen's stockholders to vote in favor of the Proposed Transaction, the Board, jointly with Granite, authorized the filing of a materially incomplete and misleading Registration Statement on Form S-4 with the SEC (the

"Registration Statement") by Granite, in violation of Sections 14(a) and 20(a) of the Exchange Act.  In particular, the Registration Statement contains materially incomplete and misleading information concerning, among other things: (i) financial projections for the Company; (ii) financial projections for Granite; (iii) the valuation analyses performed by Layne Christensen's financial advisor, Greentech Capital Advisors Securities LLC ("Greentech"), in support of its fairness opinion; and (iv) any conflicts of interest involving Layne Christensen's financial advisors.

5.     For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Layne Christensen, the Board, and Granite for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.  Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Layne Christensen stockholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from Defendants' violations of the Exchange Act.

6.     As set forth more fully herein, Plaintiff seeks to enjoin Defendants from proceeding with the Proposed Transaction.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

8.     This Court has personal jurisdiction over all Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District or is an individual who is either present in this District for jurisdictional

purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

9.    Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.  Further, the Company's principal executive offices are located in this District.

## PARTIES

10.    Plaintiff is, and has been at all times relevant hereto, the owner of Layne Christensen common stock.

11.    Defendant Layne Christensen is a Delaware corporation with its principal executive offices located at 1800 Hughes Landing Boulevard, Suite 800, The Woodlands, Texas, 77380.  The Company's common stock is traded on the NYSE under the symbol "LAYN."

12.    Defendant David A.B. Brown ("Brown") has been a member of the Company's Board since 2003 and the Chairman of the Board since 2005.

13.    Defendant J. Samuel Butler ("Butler") has been a member of the Company's Board since 2003.

14.    Defendant Michael J. Caliel ("Caliel") has been the Company's President, Chief Executive Officer ("CEO") and member of the Company's Board since 2015.

15.    Defendant Robert R. Gilmore ("Gilmore") has been a member of the Company's Board since 2009.

16.    Defendant John T. Nesser III ("Nesser") has been a member of the Company's Board since 2003.

17.    Defendant Nelson Obus ("Obus") has been a member of the Company's Board since 2004.  Defendant Obus is president of Wynnefield Capital, Inc. and a managing member of

Wynnefield Capital Management, LLC. Both companies have indirect beneficial ownership in securities held in the name of Wynnefield Partners Small Cap Value, L.P., Wynnefield Partners Small Cap Value, L.P. I, Wynnefield Partners Small Cap Value Offshore Fund, Ltd., Channel Partnership II, L.P. and the Wynnefield Capital, Inc. Defendant Obus is the indirect beneficial owner of 1,856,142 shares or 9.3% of the Company.

18.    Defendant Alan P. Krusi ("Krusi") has been a member of the Company's Board since 2016.

19.    Defendants Brown, Butler, Caliel, Gilmore, Nesser, Obus, and Krusi are collectively referred to herein as the "Individual Defendants."

20.    Defendant Granite is a Delaware Corporation with its principal executive offices located at 585 West Beach Street, Watsonville, California, 95076.

21.    Defendant Merger Sub is a Delaware corporation and a wholly owned subsidiary of Granite.

## CLASS ACTION ALLEGATIONS

22.    Plaintiff brings this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of Layne Christensen (the "Class"). Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

23.    This action is properly maintainable as a class action for the following reasons:

a.    The Class is so numerous that joinder of all members is impracticable. As of November 28, 2017, there were 19,882,366 Layne Christensen common shares outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

b.      Questions of law and fact are common to the Class, including, among others: (i) whether Defendants have violated Sections 14(a) of the Exchange Act by misrepresenting or omitting material information concerning the Proposed Transaction in the Registration Statement; (ii) whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and (iii) whether Plaintiff and the Class would be irreparably harmed if the Proposed Transaction is consummated as currently contemplated and pursuant to the Registration Statement as currently composed.

c.      Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

d.      Plaintiff's claims are typical of the claims of the other members of the Class and Plaintiff does not have any interests adverse to the Class.

e.      The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

f.      A class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

24.      Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, preliminary and final injunctive relief on behalf of the Class as a whole is entirely appropriate.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

25.    Layne Christensen is a global water management, construction, and drilling company providing solutions for water, mineral, and energy challenges around the world. The Company operates throughout North America, as well as Africa, Australia, Europe, Brazil, and through its affiliates in other South American countries. The Company's customers include government agencies, investor-owned utilities, industrial companies, global mining companies, consulting engineering firms, heavy civil construction contractors, oil and gas companies, power companies, and agribusiness.

26.    Layne Christensen is experiencing significant growth. The Company's calendar year 2018 EBITDA projection is forecasted at $52 million, which is up significantly from Layne Christensen's latest twelve months EBITDA as of October 31, 2017 of $25 million (excluding Heavy Civil, which was divested). In fact, calendar year 2019 EBITDA is forecasted at $82 million and calendar year 2020 EBITDA is forecasted at $107 million.

27.    Each of Layne Christensen's divisions is positioned to experience substantial growth over the next several years due to secular and cyclical dynamics.

### The Company Announces the Proposed Transaction

28.    On February 14, 2018, the Company issued a press release announcing the Proposed Transaction, which stated, in pertinent part:

> WATSONVILLE, Calif. & THE WOODLANDS, Texas--(BUSINESS WIRE)-- Granite Construction Incorporated (NYSE:GVA) and Layne Christensen Company (NASDAQ:LAYN) announced today that they have entered into a definitive agreement whereby Granite will acquire all of the outstanding shares of Layne in a stock-for-stock transaction valued at $565 million, including the assumption of net debt. The transaction, which was unanimously approved by the Boards of Directors of both companies, is expected to close in the second quarter of 2018.

Under the terms of the agreement, Layne shareholders will receive a fixed exchange ratio of 0.270 Granite shares for each share of Layne common stock they own. This represents $17.00 per Layne share, or a premium of 33%, based on the volume-weighted average prices for Granite and Layne shares over the past 90 trading days. Following the close of the transaction, Layne shareholders will own approximately 12% of Granite shares on a fully diluted basis, and Granite's Board will be expanded to include one additional director from Layne. The transaction represents an enterprise value multiple of 8.2x 2018 expected EBITDA[1].

As a leading water management, construction, and drilling company with the #1 position in well drilling and a #2 position in cured-in-place pipe (CIPP) rehabilitation, Layne significantly enhances Granite's presence in the large and growing water infrastructure market. The combined company, including Granite's existing water business, will have water-related revenues of approximately $600 million[3], positioning Granite as a national leader across both the transportation and water infrastructure markets. Together, Granite and Layne will have nearly 7,000 employees and serve a diverse and growing customer base.

"This strategic transaction brings together two complementary organizations to create a platform for growth, delivering significant benefits for shareholders, employees, and customers," said James H. Roberts, President and Chief Executive Officer of Granite. "With Layne's expertise and leading water positions, Granite will advance its goal of becoming a full suite provider of construction and rehabilitation services for the water and wastewater market. With enhanced scale and capabilities, Granite will be better positioned to address the growing water and wastewater needs throughout the infrastructure lifecycle. We expect this transaction will create value for shareholders in both the near- and long-term, including earnings accretion on an adjusted basis and synergy realization. As a stronger player in the attractive water and wastewater sector, we will have significant opportunities to capture a larger share of the market and accelerate our growth prospects."

## Background of the Proposed Transaction

29.    In the fall of 2016, James Roberts ("Roberts"), Granite's President and Chief Executive Officer, contacted Defendant Caliel, in order to arrange a time to meet in person to discuss the possibility of a strategic transaction involving Granite and Layne Christensen.

30.    On December 22, 2016, Mr. Roberts sent Defendant Caliel a letter proposing that Granite acquire all outstanding shares of Layne Christensen Common Stock based on an implied

value of $11.75 per Layne Christensen share, payable either in all cash or in a combination of cash and shares of Granite Common Stock (the "December 2016 Proposal").

31.    Over the next two months, the Company's management, in consultation with the Board, evaluated the December 2016 Proposal but ultimately decided not to pursue the December 2016 Proposal based due to its determination that the consideration offered did not appropriately reflect the value of the Company's business.

32.    From April 2017 through early May 2017, the Company interviewed various investment banking firms, ultimately meeting with Greentech on May 5, 2017, to discuss the possibility of Greentech providing certain financial advisory services to Layne Christensen, including evaluating potential business combination opportunities.  On June 23, 2017, Layne Christensen formally engaged Greentech for that purpose.

33.    On September 11, 2017, Granite again contacted Defendant Caliel to gauge Layne Christensen's interest in participating in further discussions regarding a potential transaction with Granite.

34.    On October 30, 2017, Granite CEO Roberts called Defendant Caliel to inform him that a written proposal for Granite to acquire Layne Christensen would be forthcoming. This proposal contemplated a transaction in which Granite would acquire all outstanding shares of the Company's Common Stock in an all-stock transaction (the "October 2017 Proposal"). The letter proposed an exchange ratio valuing Layne Christensen Common Stock at $15.25 per.

35.    On November 1, 2017, the Board held a special meeting to review the October 2017 Proposal, including Granite's previous interest in acquiring Layne Christensen and its renewed interest arising from the Company's improved business outlook.  The Board expressed

its view that the October 2017 Proposal as contemplated was inadequate but authorized the Company's management to conduct diligence sessions with Granite.

36.     On December 12, 2017, Granite sent the Company a letter proposing that Granite acquire all outstanding shares of Layne Christensen Common Stock for $16.25 per share, with the consideration comprised of shares of Granite Common Stock (the "First December 2017 Proposal").

37.     On December 14, 2017, the Board held a special meeting where it recommended that the Company's management decline the First December 2017 Proposal but authorized it to continue to negotiate with Granite.

38.     On December 18, 2017, representatives of the Company and Granite participated in a telephone conversation in which they discussed the possibility of a strategic transaction in which Granite would acquire all outstanding shares of Layne Christensen Common Stock for $17.00 per share, subject to a "collar" provision to be agreed by the parties that would protect Layne Christensen's shareholders from a potential decrease in the value of Granite Common Stock.

39.     On December 22, 2017, the Company received another proposal from Granite, with an implied valuation of Layne Christensen Common Stock of $17.00 per share, subject to a collar to be determined (the "Second December 2017 Proposal").

40.     Throughout January and February 2018, Layne Christensen and Granite continued negotiations.  On February 8, 2018, the parties met and were provided updates with respect to continued negotiations related to the Proposed Transaction.  Representatives of Greentech provided a financial analysis with respect to various combinations of implied value per share and collar parameters.  The Board recommended that the Company's management continue to pursue

the Proposed Transaction based on an implied value of $17.00 per share. The Board further stated that setting an exchange ratio **without a collar** would be more favorable to Layne stockholders.

41.　Finally, on February 13, 2018, the parties came to a final agreement on the Proposed Transaction, setting a value of $17.00 per share with an exchange ratio of 0.27, and agreeing to eliminate the collar provision which would protect shareholders in the event of a drop in Granite Common Stock.

## The Proposed Transaction is Unfair to Shareholders

42.　The Proposed Transaction, as currently contemplated, is unfair to the Company's shareholders.

43.　Throughout negotiations, Defendants took actions that were to the detriment of the Company's shareholders. For instance, despite the negotiation process lasting longer than a year, consisting of several offers that the Board deemed inadequate, the Board made no attempt during that period to seek a superior offer from a suitor other than Granite. Instead, they quickly settled on a deal well below fair market value with Granite, the only bidder contacted.

44.　Throughout negotiations, the Company continually pushed for collar provisions to protect its shareholders in the event of a decline of Granite Common Stock. By the time that negotiations were finalized, the Company inexplicably decided to drop the collar provisions, to the detriment of its shareholders.

45.　Moreover, when entering into the Merger Agreement, the Company's Board agreed to preclusive deal protection devices that ensure that no competing offers for Layne Christensen will be forthcoming.

46.     Specifically, pursuant to the Merger Agreement, Defendants agreed to: (i) a strict no-solicitation provision that prevents the Company from soliciting other potential acquirers; (ii) an information rights provision that requires the Company to disclose the identity of any competing bidder and to furnish Granite with the terms of any competing bid; and (iii) a provision that requires the Company to pay Granite a termination fee of $16 million in cash if the Company ultimately decides to pursue another offer, essentially requiring an unsolicited bidder to pay a premium to provide a superior offer to the Company and its shareholders.

47.     These deal protection provisions, particularly when considered collectively, substantially and improperly limited the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives, including a sale of all or part of Layne Christensen. Given that the preclusive deal protection provisions in the Merger Agreement impede a superior bidder from emerging, it is imperative that the Company's shareholders receive all material information necessary for them to cast a fully informed vote at the shareholder meeting concerning the Proposed Transaction.

**Excessive Compensation to the Company's Officers
and Directors Resulting From the Proposed Transaction**

48.     Certain of the officers and/or directors of the Company have significant financial interests in completing the Proposed Merger.  The following chart, taken from the Registration Statement, shows the potential payouts to Layne Christensen's officers and directors as a result of the Proposed Transaction:

**Outstanding Awards**

| Name | Type of Award | Number of Shares | Estimated Cash Payment Amount |
|---|---|---|---|
| Michael J. Caliel | Stock Options (Vested) | 109,409 | $ 650,984 |
| | Stock Options (Unvested) | — | — |
| | RSUs | 173,739 | $ 2,781,561 |
| | PSUs | 659,874 | $ 10,564,583 |
| J. Michael Anderson | Stock Options (Vested) | 7,500 | $ 55,575 |
| | Stock Options (Unvested) | 2,500 | $ 18,525 |
| | RSUs | 46,803 | $ 749,316 |
| | PSUs | 170,120 | $ 2,723,621 |
| Steven F. Crooke | Stock Options (Vested) | 111,031 | $ 121,744 |
| | Stock Options (Unvested) | — | — |
| | RSUs | 54,366 | $ 870,400 |
| | PSUs | 199,962 | $ 3,201,392 |
| Kevin Maher | Stock Options (Vested) | 12,896 | — |
| | Stock Options (Unvested) | — | — |
| | RSUs | 27,726 | $ 443,893 |
| | PSUs | 92,834 | $ 1,486,272 |
| Larry Purlee | Stock Options (Vested) | 22,971 | — |
| | Stock Options (Unvested) | — | — |
| | RSUs | 30,000 | $ 480,300 |
| | PSUs | 98,420 | $ 1,575,704 |
| David A. B. Brown | Stock Options (Vested) | 168,345 | $ 1,065,398 |
| | Stock Options (Unvested) | — | — |
| | RSUs | 8,475 | $ 135,685 |
| J. Samuel Butler | Stock Options (Vested) | 64,960 | $ 604,598 |
| | Stock Options (Unvested) | — | — |
| | RSUs | 5,650 | $ 90,457 |
| Nelson Obus | Stock Options (Vested) | 39,885 | $ 302,148 |
| | Stock Options (Unvested) | — | — |
| | RSUs | 5,650 | $ 90,457 |
| Robert R. Gilmore | Stock Options (Vested) | 22,673 | $ 134,286 |
| | Stock Options (Unvested) | — | — |
| | RSUs | 5,650 | $ 90,457 |
| John T. Nesser | Stock Options (Vested) | 6,444 | — |
| | Stock Options (Unvested) | — | — |
| | RSUs | 5,650 | $ 90,457 |
| Alan P. Krusi | Stock Options (Vested) | 32,874 | $ 300,160 |
| | Stock Options (Unvested) | — | — |
| | RSUs | 5,650 | $ 90,457 |

49.     The Compensation to the Company's officers and directors resulting from the Proposed Transaction is egregious, as management's change-in-control compensation described in the Registration Statement provides for total compensation of nearly $32 million for five of the Company's executives upon completion of the Proposed Transaction.  The Board and the Company's management have put their own interests ahead of the best interests of the Company's shareholders while they quickly settled on a deal well below fair market value with Granite.

## FALSE AND MISLEADING STATEMENTS
## AND/OR MATERIAL OMISSION IN THE REGISTRATION STATEMENT

50.     On March 13, 2018, the Company authorized the filing of the Registration Statement by Granite with the SEC.    The Registration Statement recommends that the Company's stockholders vote in favor of the Proposed Transaction.

51.     Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's unitholders to ensure that it did not contain any material misrepresentations or omissions.    However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's shareholders to make informed decisions concerning whether to vote in favor of the Proposed Transaction.

52.     Specifically, the Registration Statement contains materially incomplete and/or misleading information regarding, among others: (i) financial projections for the Company; (ii) financial projections for Granite; (iii) the valuation analyses performed by Layne Christensen's financial advisor, Greentech, in support of its fairness opinion; and (iv) any conflicts of interest involving Layne Christensen's financial advisors.

### Material False and Misleading Statements or Material
### Misrepresentations or Omissions Regarding Layne Christensen's Financial Projections

53.     First, the Registration Statement fails to provide material information concerning the Company's financial projections.    Specifically, the Registration Statement provides projections for non-GAAP (generally accepted accounting principles) metrics, including EBITDA, but fails to provide line item projections for the metrics used to calculate these non-GAAP measures or otherwise reconcile the non-GAAP projections to the most comparable GAAP measures.

54.     When a company discloses non-GAAP financial measures in a Registration Statement, the Company must also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method), of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.

55.     Indeed, the SEC has recently increased its scrutiny of the use of non-GAAP financial measures in communications with shareholders.  The former SEC Chairwoman, Mary Jo White, recently stated that the frequent use by publicly traded companies of unique company-specific non-GAAP financial measures (as Layne Christensen and Granite have included in the Registration Statement here), implicates the centerpiece of the SEC's disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation. Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices which can make non-GAAP disclosures misleading: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data. I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures. I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[1]

56.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading and has, therefore, heightened its scrutiny of the use of such

---

[1]  Mary Jo White, Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgnspeech.html.

projections.[2]  Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[3]  One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

57.    In order to make the projections included on page 86 of the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

58.    At the very least, the Company must disclose the line item projections for the financial metrics that were used to calculated the non-GAAP measures, including: (i) capital expenditures; (ii) changes in net working capital; (iii) net income; (iv) net earnings; (v) earnings per share; (vi) interest expense; (vii) income taxes; (viii) depreciation and amortization; (ix) amortization of intangibles; and (x) a reconciliation of all non-GAAP to GAAP metrics. Such projections are necessary to make the non-GAAP projections included in the Registration Statement not misleading.   Indeed, Defendants acknowledge that disclosing non-GAAP projections may mislead shareholders in the Registration Statement: "Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by Layne

---

[2]  *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-thesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math is-helping-companies-spin-losses-into-profits.html?_r=0.

[3]  Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

Christensen may not be comparable to similarly titled amounts used by other companies." Registration Statement, at 86.

59.    In addition, the Registration Statement fails to disclose whether Layne Christensen's management and Board could have refinanced the upcoming 2018 maturity of Layne Christensen's $70 million 4.25% convertible notes at much lower levels due to the $52 million of forecasted calendar year 2018 EBITDA, gross leverage (excluding cash) is less than 4x, which can be readily refinanced given prevailing market conditions.  Moreover, to the extent that Layne Christensen's 8.0% convertible notes were treated on an as-converted basis, gross leverage (excluding cash) would be 1.3x, making it even easier for Layne Christensen to refinance this convertible debt.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Granite's Financial Projections

60.    The Registration Statement fails to disclose Granite's line item projections for the financial metrics that were used to calculated the non-GAAP measures, including: (i) capital expenditures; (ii) changes in net working capital; (iii) net income; (iv) net earnings; (v) earnings per share; (vi) interest expense; (vii) income taxes; (viii) depreciation and amortization; (ix) amortization of intangibles; and (x) a reconciliation of all non-GAAP to GAAP metrics.

61.    Such projections are necessary to make the non-GAAP projections included in the Registration Statement not misleading.  Indeed, Defendants acknowledge that disclosing non-GAAP projections may mislead shareholders in the Registration Statement: "Non-GAAP financial measures should not be considered in isolation from, or as a substitute for, financial information presented in compliance with GAAP, and non-GAAP financial measures as used by Granite may not be comparable to similarly titled amounts used by other companies." Registration Statement, at 86.

62.     The line items referenced above are material since the merger consideration consists of Granite stock to be received by Layne Christensen's shareholders, thus being vital to shareholders in determining whether to vote in favor of the Proposed Transaction.

**Material False and Misleading Statements or Material
Misrepresentations or Omissions Regarding Greentech's Analyses**

63.     With respect to Greentech's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) the range of terminal values of Layne Christensen; (ii) the inputs underlying the discount rates ranging from 10.3% to 12.3%; (iii) Greentech's basis for applying perpetuity growth rates ranging from 1.5% to 2.0% to Layne Christensen's terminal year unlevered free cash flows; (iv) Layne Christensen's net debt as of October 31, 2017; (v) the basis for determining the implied per share equity value of Layne Christensen's federal net operating loss carryforward balance ("NOL");  and (vi) the basis and inputs underlying the discount rates of 11.3% used to determine the NOLs.

64.     The Registration Statement also fails to disclose: (i) the range of terminal values of Granite; (ii) the inputs underlying the discount rates ranging from 9.0% to 11.0%; and (iii) the range of perpetuity growth rates for Granite.

65.     With respect to Greentech's *Selected Publicly Traded Companies Analysis*, the Registration Statement fails to disclose the individual multiples and financial metrics for each of the companies observed by Greentech in the analysis, including: (i) 2017 EV Values; (ii) 2017 Adjusted EBITDA; (iii) 2018 EV Values; (iv) 2018 Adjusted EBITDA; and (v) how the publicly traded companies for the analysis were selected.

66.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover,

the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

67.     With respect to Greentech's *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose why Greentech only used precedent transactions in the Engineering, Procurement and Construction segment since October 2015.  Greentech fails to disclose the basis for its usage of management's application of an illustrative range of EV/NTM Adjusted EBITDA Multiples of 7.0x to 11.5x to Layne's NTM Adjusted EBITDA for calendar year 2018.

68.     With respect to Greentech's *Implied Premium Paid Analysis*, the Registration Statement fails to disclose: (i) the acquisition transactions observed by Greentech in the analysis; and (ii) the implied premium paid in such transactions.

69.     The Registration Statement also fails to disclose for each company the closing stock price of the target company in the last day prior to the announcement of the transaction and against the 52-week stock price high of the target company as of the last day prior to the announcement of the transaction for the *Implied Premium Paid Analysis*.

70.     Although valued by the Company, the Registration Statement fails to provide the "Potential Sum-of-the-Parts Value" analysis.  The implied Layne Christensen transaction value of $565 million is significantly below Layne Christensen's own recently announced view of its value.  In Layne Christensen's "Potential Sum-of-the-Parts Value" set forth in its November 2017 investor presentation, Layne Christensen indicated that its value was between $585 million and $900 million (excluding corporate overhead, but also excluding NOL carryforwards).

Additionally, this previously announced value range excludes any value from the recently signed long-term agreement with the Texas General Land Office.  According to Layne Christensen, this new agreement is expected to result in an opportunity that is four to five times the size of Layne Christensen's existing midstream business.  This could add potentially hundreds of millions of dollars of incremental value to Layne Christensen, nearly all of which will now accrue to Granite rather than the Company's stockholders if the Proposed Transaction is consummated.

71.     The omission of the above material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) "Background of the Merger"; (ii) "Recommendation of the Layne Board of Directors; "Layne's Reasons for the Merger"; (iii) "Opinion of Layne's Financial Advisor"; and (iv) "Certain Unaudited Prospective Financial Information."

72.     The Registration Statement also fails to disclose material information regarding potential conflicts of interest of Greentech, the Company's financial advisor for the Proposed Transaction, including Greentech's holdings in Granite and/or any of Granite's affiliates.  The Registration Statement also fails to disclose whether Greentech, in the two years preceding the date of its opinion or more, had any material relationship with affiliates of any party to the Proposed Transaction and/or material relationships with the parties to the Proposed Transaction beyond two years.

73.     Without the above-described material information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transaction.

**Shareholder Opposition to the Proposed Transaction**

74.    On March 20, 2018, Cetus Capital LLC, the beneficial owner of approximately

1.2% of the Company filed a Schedule 13D/A with the SEC in opposition of the Merger

Agreement (the "Opposition").  The Opposition stated, in pertinent part:

> We oppose the Merger Agreement and intend to vote against the proposed merger
> and any other proposals presented to Layne's stockholders for approval at the
> upcoming special meeting of stockholders referred to in the Registration
> Statement on Form S-4 (the "S-4") filed by Granite Construction Incorporated
> ("Granite") with the SEC on March 12, 2018 in connection with the proposed
> merger.
>
> We believe Layne is selling itself at the wrong time for the wrong price and that
> the proposed transaction with Granite significantly undervalues Layne.  Our
> intention to vote against the transaction is based on several factors, including, but
> not limited to:
>
> A. The implied Layne transaction value of $565 million is significantly
> below Layne's own recently announced view of its value.  In Layne's
> "Potential Sum-of-the-Parts Value" set forth in its November 2017
> investor presentation, Layne indicated that its value was between $585
> million and $900 million (excluding corporate overhead, but also
> excluding NOL carryforwards). Additionally, this previously announced
> value range excludes any value from the recently signed long-term
> agreement with the Texas General Land Office.  According to Layne, this
> new agreement is expected to result in an opportunity that is four to five
> times the size of Layne's existing midstream business. This could add
> potentially hundreds of millions of dollars of incremental value to Layne,
> nearly all of which will now accrue to Granite rather than the Layne
> stockholders if the proposed merger is consummated.
>
> B. The transaction value per share of $17.00 for Layne's common stock
> stated in the S-4 is very misleading, as Granite's closing share price of
> $60.08 the day prior to the transaction announcement implied a per share
> price of Layne's common stock of $16.22 based on the exchange ratio of
> 0.270 Granite shares for each share of Layne common stock.  As of
> March 19, 2018, the implied value per share of Layne is now only $15.91.
>
> C. Layne is experiencing significant growth as evidenced by its own
> EBITDA projections in the S-4. Calendar year 2018 EBITDA is
> forecasted at $52 million, which is up significantly from Layne's latest
> twelve months EBITDA as of October 31, 2017 of $25 million (excluding
> Heavy Civil, which was divested). Additionally, according to the S-4,

calendar year 2019 EBITDA is forecasted at $82 million and calendar year 2020 EBITDA is forecasted at $107 million.  And, again, nearly all of this increased value will accrue to Granite rather than the Layne stockholders.

D. Each of Layne's divisions is positioned to experience substantial growth over the next several years due to secular and cyclical dynamics. We believe Granite is acquiring Layne at a point where each of Layne's divisions have inflected and are beginning a multi-year period of significant projected growth.

E. Granite's lack of familiarity with a significant portion of Layne's business implies that Granite is not paying an appropriate value for Layne.  This is clearly demonstrated by Granite's responses to analyst questions regarding Layne's businesses on Granite's February 14, 2018 investor call to discuss the acquisition of Layne.  For example, when asked about Granite's intent to retain Layne's Mineral Services division, Granite's response was "Yeah. I think it is a little early to ask the question, certainly not too early to ask but too early to respond. We'll have a joint integration planning team put together here immediately and they'll be spending the next several months to make sure that we optimize all parts of the business."  There was a similar answer to virtually all other questions related to Layne's businesses.

F. As is plainly seen in the S-4 disclosure, Layne and its financial advisors did not run a broad process.  Instead, they quickly settled on a deal well below fair market value with Granite so that management and its financial advisor could line their own pockets at the expense of Layne stockholders. In fact, as reflected in the S-4, besides Granite not a single potential bidder was contacted.

G. The Merger Agreement does not include a customary "go shop" provision; which we think would have been particularly useful in this deal since management and Layne's financial advisor failed to contact any other bidders and quickly settled on the deal offered by Granite.

H. As is also reflected in the S-4, Layne's Board and management hastily agreed to eliminate a collar which would have created some protections for Layne stockholders.

I. Management's compensation is egregious. The Layne management change-in-control compensation described in the S-4 provides for total compensation of nearly $32 million for five executives upon the sale of Layne to Granite.  Clearly Layne's Board and management put their own interests ahead of the best interests of Layne's stockholders in a rush to agree to the deal with Granite.

J. The financial advisory fee payable to Greentech of $8 million in connection with the proposed merger is excessive, especially considering a sales process was not conducted. This is clearly a waste of corporate assets.

K. Given the forecasted financial results, in particular upon resolution of Layne's capital structure, we believe that the market would ascribe a value to Layne's business far in excess of the implied transaction value offered by Granite in the proposed merger.

L. As is clear in the S-4 disclosure, the judgement of Layne's management and Board were clouded by the upcoming 2018 maturity of Layne's $70 million 4.25% convertible notes. However, with $52 million of forecasted calendar year 2018 EBITDA, gross leverage (excluding cash) is less than 4x, which can be readily refinanced given prevailing market conditions. Moreover, to the extent Layne's 8.0% convertible notes were treated on an as-converted basis, gross leverage (excluding cash) would be 1.3x, making it even easier for Layne to refinance this convertible debt. The focus on the upcoming maturities of the convertible bonds created an unnecessary impetus for Layne's Board and management to hastily agree to an inferior deal with Granite that does not result in fair value for Layne stockholders.

M. For all of the reasons described above, Layne's Board and management have violated their fiduciary duties to Layne's stockholders. The deal with Granite is simply bad for Layne stockholders.

Again, for all of the above reasons, we believe this transaction significantly undervalues Layne and we intend to vote against the transaction.

Schedule 13D, filed with the SEC on March 20, 2018, at 16-19.

## COUNT I

### (Against All Defendants for Violations of Section 14(a)
### of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

75. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

76. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the

Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

77.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

78.    Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction.  Each Defendant reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

79.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each Defendant, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

80.    Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not

misleading. Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

81. Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

82. Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a registration statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

83. The misrepresentations and omissions in the Registration Statement are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

84. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**COUNT II**

**(Against the Individual Defendants for
Violations of Section 20(a) of the Exchange Act)**

85.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

86.     The Individual Defendants acted as controlling persons of Layne Christensen within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Layne Christensen, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

87.     Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

88.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in preparing this document.

89.     In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

90.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

91.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

92.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment and relief as follows:

A.     Ordering that this action may be maintained as a class action and certifying Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel;

B.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

C.      Directing the Individual Defendants to disseminate an Amendment to its Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.      Directing Defendants to account to Plaintiff and the Class for their damages sustained because of the wrongs complained of herein;

E.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

DATED:  April 3, 2018.

Respectfully submitted,

_____/s/ Thomas E. Bilek_____
Thomas E. Bilek
TX Bar No. 02313525 / SDTX Bar No. 9338
**THE BILEK LAW FIRM, L.L.P.**
700 Louisiana, Suite 3950
Houston, TX  77002
(713) 227-7720

*Attorneys for Plaintiff*

**OF COUNSEL:**

Joshua M. Lifshitz
**LIFSHITZ & MILLER LLP**
821 Franklin Avenue, Suite 209
Garden City, NY  11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376
Email: jml@jlclasslaw.com